MABEL GROVER, ADMINISTRATRIX AD PROSEQUENDUM, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT.

Submitted May 18, 1930—Decided March 5, 1931.

Before Justices CASE, DALY and DONGES.

For the rule, *Applegate, Stevens, Foster & Reussile.*

*Contra, Clarence Sackett.*

PER CURIAM.

A rule to show cause was allowed why a verdict in favor of the plaintiff should not be set aside and a new trial granted on the ground that the verdict is contrary to the weight of the evidence as to the negligence of the defendant and as to the contributory negligence of the decedent, and because the verdict is excessive.

A verdict for $18,000 was awarded the plaintiff. The action was brought to recover damages for the alleged wrongful killing of plaintiff's decedent as a result of a collision between defendant's train and an automobile truck driven by decedent across the tracks of the New York and Long Branch Railroad Company, known as Fourth avenue, in Bradley Beach. The accident occurred on May 23d, 1928, at about six-thirty A. M. The train was being operated northwardly from Point Pleasant to New York. Decedent was driving a motor truck from west to east and stopped a short distance from the crossing to permit a freight train, which was operating on the southbound or most westerly track, to pass. The engine of the freight train was headed south and the train, after blocking the crossing for some three or five minutes, backed northwardly, and when the engine of the freight train had cleared the crossing by approximately one hundred feet, decedent undertook to cross. The crossing was not protected by gates or a flagman but was protected by an automatic signal or flasher which was operating before and at the time of the accident.

A single witness, Clifford Knee, testified for the plaintiff with respect to the occurrence. He testified that he was in his truck on the easterly side of the railroad tracks waiting for the freight train to clear the siding, and when it moved to the north he started to cross, saw the northbound train coming, backed off the tracks and allowed it to pass. He said he did not hear any bell or whistle but the flasher or signal was operating.

On behalf of the defendant, one Palaia, a dealer in fruits and vegetables, testified that he was in his truck which was standing behind that of the defendant on the west side of the tracks; that he heard the whistle blow and saw the lights flash; saw decedent start across; saw the train coming a block away; heard the whistle blow when the train was a block away; and witnessed the collision. There were the engineer, fireman, baggageman, conductor and brakeman of the train which figured in the collision, who testified that the signals were given, as did the engineman, fireman, and an-

other member of the crew of the freight train which was standing to the north of the crossing.

Despite the fact that admittedly it was a foggy, misty morning with low visibility, we have a situation where the decedent stopped at a railroad crossing to permit a freight train to clear the crossing. He saw the lights continue to flash after the freight train had passed northwardly about one hundred feet and apparently assumed that the crossing lights were being operated by the freight train and that no train was approaching from the south.

Leaving the question of contributory negligence out of consideration, we conclude that the great weight of the evidence supported a finding that the statutory signals were given and that the verdict must be set aside on that ground.

The rule to show cause will be made absolute.